IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF WISCONSIN

JEFFREY D. LEISER

    Plaintiff,

v.

DR. KARL M. HOFFMAN, et al.,

    Defendants.

OPINION and ORDER

Case No. 18-cv-277-slc

*Pro se* plaintiff Jeffrey Leiser, a prisoner currently incarcerated at Redgranite Correctional Institution (Redgranite), is proceeding in this lawsuit on Eighth Amendment claims related to how three defendants handled his severe back problems. On April 10, 2019, I granted Leiser leave to proceed against Dr. Hoffman and Nurses Toni Johnson and K. Frisk, for their allegedly inappropriate decisions related to Leiser's pain management and the timing of when he saw a doctor. However, I denied Leiser leave to proceed against Nurses L. Dobbert, N. Krahenbukl, and Rink, Health Services Unit (HSU) managers Warner and Baker, as well as an unidentified number of John and Jane Doe correctional officers. (Dkt. 17.)

Leiser has filed a motion to amend his complaint to include additional allegations as to Krahenbukl, Baker, Rink and the Doe defendants. (Dkt. 18.) I will grant his motion to amend, construe Leiser's allegations in his motion as a supplement to his complaint, and screen these new allegations as required by 28 U.S.C. § 1915A. For the reasons that follow, Leiser's supplemental allegations are sufficient to allow him to proceed on Eighth Amendment claims against Krahenbukl and Baker, but he may not proceed against Rink or any Doe correctional officers.

ALLEGATIONS OF FACT

I will incorporate by reference the facts from Leiser's original complaint as set forth in the leave to proceed order (dkt. 17, at 2-7), but will provide a summary and repeat the facts relevant to Krahenbukl, Rink, Baker, and the Doe defendants:

Leiser has severe back problems, for which he had a longstanding prescription for tramadol to relieve his pain. In March of 2018, Dr. Hoffman terminated Leiser's prescription of tramadol because he suspected that Leiser was not taking it as prescribed. Thereafter, Leiser submitted multiple health service requests (HSRs), complaining about withdrawal symptoms.

On March 8, 2018, Leiser submitted an HSR on March 8, 2018, writing: "I was sent to seg today, I was told that Dr. Hoffman cancelled my tramadol. WHY? I have not abused my meds in any way. My ticket has nothing to do with my meds. Now I will go through withdrawals [*due*] to sudden stop." (Comp. (dkt. 1) ¶ 65.)

On March 9, Nurse Krahenbukl met with Leiser, although it appears this was not in response to Leiser's March 8, HSR. After Leiser described his symptoms, Krahenbuhl contacted the on-call doctor, Dr. Fuller, who prescribed naproxen and an increased Tylenol dose.

On March 10, 2018, Nurse Rink responded in writing to Leiser's March 8 HSR, explaining that Dr. Hoffman discontinued Leiser's tramadol because Dr. Hoffman suspected misuse. Rink also noted that Leiser already had been seen for withdrawal symptoms, a reference to Leiser's March 9 meeting with Krahenbuhl.

On March 11, 2018, Leiser submitted another HSR, this time directing it to HSU manager Baker and stating that he had been suffering from chest pain for more than two days. He received a response on March 13 explaining that Dr. Hoffman had discontinued the tramadol and it would not be restarted.

2

Leiser's supplemental allegations provide a different context for his complaints about withdrawal symptoms. Specifically, he alleges that on March 9, he told Krahenbukl that he was having "sharp, shooting, stabbing chest pain," but she never discussed or followed up with him or with the on call doctor about this chest pain, even though she noted in the treatment record that Leiser had reported these symptoms. (Pl. Exhs. 25, 26 (dkt. 1-2 at 37-38).) Leiser further alleges that his medical chart showed that Dr. Hoffman already had scheduled him for a cardiac catheterization: Exhibit 26 to Leiser's complaint shows a note from Dr. Hoffman, dated March 1, 2018, to schedule Leiser for that procedure. (*See* Pl. Ex. 26 (dkt. 1-2, at 39).) According to Leiser, these two pieces of information should have prompted Krahenbukl to discuss his chest pains further and alert Dr. Fuller to his report of chest pains. Because she did not do either of these things, Leiser continued to suffer chest pains.

Leiser further alleges that on April 20, 2018, he was sent to Gunderson Health in La Crosse for his chest pain. A physician named Dr. Brown performed a cardiac catheterization that revealed that Leiser needed two stents due to two 90% blockages. Leiser claims that the sudden discontinuation of tramadol caused him irreversible heart damage. Before leaving Gunderson, Dr. Brown called Dr. Hoffman and ordered Clopidogrel 75 mg, a blood thinner, for Leiser to start taking immediately upon his return to NLCI.

When Leiser returned to NLCI that evening, Krahenbukl saw him in the HSU. Leiser asked for the medication Dr. Brown ordered; Krahenbuhl responded that she knew nothing about a new medication. Leiser left the HSU without receiving any Clopidogrel, and Krahenbukl did not follow up, leaving Leiser with no blood thinning medication.

About a week later, Dr. Hoffman met with Leiser, and Leiser reported that he had not been taking the Clopidogrel. Dr. Hoffman allegedly got upset, telling Leiser that he had ordered Leiser to start the Clopidogrel "STAT." Leiser claims that he overheard Dr. Hoffman yell at Krahenbukl about

3

failing to get Leiser his medication. A week later, Leiser still reported chest pains to Dr. Hoffman, so Hoffman referred him back to Dr. Brown at Gunderson. Dr. Brown had to perform a second catheterization in an effort to clear out the stents, which were clogged because Leiser had not been received his Clopidogrel as needed.

OPINION

Leiser's supplemental allegations are sufficient for him to proceed on Eighth Amendment deliberate indifference claims against Krahenbukl and Baker, but not Rink or any Doe correctional officers.

I.   Krahenbukl

As for Krahenbukl, Leiser previously alleged that he failed to take any action in response to his March 9, 2018, report that he was suffering from tramadol withdrawal symptoms. In reviewing Exhibit 25 to Leiser's complaint (dkt. 1-2, at 38), I noted that the records of Leiser's treatment showed that Krahenbukl forwarded Leiser's withdrawal complaints to a doctor, who prescribed Leiser naproxen and an increase in Tylenol. Since Leiser had not included any allegations suggesting that Krahenbukl should have done more to address Leiser's complaints about withdrawal, I denied him leave to proceed against her.

Leiser now claims that Krahenbukl should have done more based on his allegations that he reported chest pains on March 9, and then that Krahenbukl failed to ensure that he received his Clopidogrel after having two stents placed. These allegations are sufficient to support a reasonable inference that Krahenbukl failed to respond appropriately to Leiser's report of chest pains, and then failed to take any steps to investigate whether Leiser should have been taking the blood thinner after

4

his April 20 stent placement. Accordingly, I will grant Leiser leave to proceed against Krahenbukl.

II.     **Baker**

I will allow Leiser to proceed against Baker, but this claim is tenuous. When I initially denied Leiser leave to proceed against Baker, I reasoned that when Leiser submitted the HSR to her on March 11, Leiser had received the prescription for naproxen and a higher Tylenol dose, and Baker was entitled to defer to the physician's adjustment to his prescription at that point. But now Leiser is alleging that Baker ignored his specific complaint in the HSR that he had been suffering from chest pains for two and a half days. Given Leiser's allegation that Dr. Hoffman already had ordered the cardiac catheterization, Baker's apparent failure to take any steps to assess Leiser's complaint on March 11 gives rise to a reasonable inference that she recklessly disregarded the possibility that the physician's prescription decision did not adequately address his chest pain. Accordingly, I will grant Leiser leave to proceed against Baker.

III.    **Rink**

As for Rink, Leiser's new allegations do not suggest that the HSR she was aware that Leiser was suffering from chest pain. Rather, when Rink responded to Leiser's March 8, 2018, HSR, the only reasonable inference to be drawn is that Rink knew that Leiser believed that he would suffer from withdrawal symptoms, and that he had been seen on March 9 for his withdrawal symptoms. Leiser's allegations do not suggest that Rink had reason to believe that when he was seen on March 9, Krahenbukl did not take proper steps to assess his chest pains. Accordingly, I will not grant Leiser leave to proceed against Rink.

IV.     **Doe Correctional Officers**

Previously I denied Leiser leave to proceed against any Doe correctional officers because Leiser had not alleged what he reported to these correctional officers about his pain, making it unreasonable to infer that their failure to take action constituted deliberate indifference. Leiser has not included any additional allegations beyond those he included in his original complaint. Instead, he claims that he has not been able to locate the names of any officers that were working during this time period. Leiser's problem is not that he cannot identify these potential defendants, but that he has not alleged any facts about what he reported, when those reports occurred, or how the officers responded. Absent any factual allegations implicating any correctional officers, Leiser may not proceed against them.

## ORDER

IT IS ORDERED that:

1) Plaintiff Jeffrey Leiser's motion to amend (dkt. 18) and request for a ruling (dkt. 23) are GRANTED, as provided above.

2) Plaintiff may proceed against defendants Krahenbukl and Baker on Eighth Amendment deliberate indifference claims, but he may not proceed on his other claims against any other defendants.

3) The attorney general's office may have until **August 20, 2019,** to inform the court whether it will accept service of the complaint for defendants Krahenbukl and Baker.

Entered this 6th day of August, 2019.

BY THE COURT:

/s/

STEPHEN L. CROCKER
Magistrate Judge